# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

-----------------------------------------------

In re:

Scott Lawrence Swanson and Michelle Ann Klein-Swanson,

        Debtors.

-----------------------------------------------

Randall L. Seaver, Trustee,

        Plaintiff,

vs.

Michelle Ann Klein-Swanson,

        Defendant.

-----------------------------------------------

BKY No. 09-40290

ADV No. 11-_____

**COMPLAINT**

Randall L. Seaver, Trustee ("Trustee") of the estate of Scott Lawrence Swanson and Michelle Ann Klein-Swanson ("Estate") as and for his Complaint against the debtor Michelle Ann Klein-Swanson ("Defendant" or "Debtor"), states and alleges as follows:

1.      Plaintiff is the duly appointed Chapter 7 Trustee of the bankruptcy estate of the Debtor.

2.      This bankruptcy case was commenced on January 19, 2009 by the filing of a voluntary Chapter 7 petition.

3.      This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. §§157(b)(2) and 1334.  This proceeding arises under 11 U.S.C. §§ 541, 727, Minnesota Statutes §604.14 and common law.

4.      The Debtors filed their Chapter 7 Petition on January 19, 2009 with incomplete schedules.  On February 3, 2009 the Debtors filed completed schedules.  A copy of the Debtors' Schedules B and C are attached hereto as Exhibit A.

1

5.       On April 23, 2009 an Order was entered discharging the Debtors' debts.

### Defendant's Compensation

6.       Defendant Michelle Klein-Swanson was an employee of International Business Machines Corporation ("IBM") for all dates relevant hereto.

7.       As an employee of IBM, the Defendant was compensated through a "base plus commissions" structure.  See attached Exhibit B at page 6.  From January of 2008 to the present day, the Defendant has been eligible to receive a quarterly bonus called an excellence award (hereinafter "Excellence Award"), and an annual bonus called a growth driven profit payment (hereinafter "GDP Bonus").  For purposes of calculating these bonuses IBM uses a calendar year running from January 1 to December 31.  Exhibit B, at page 10.

8.       Attached hereto as Exhibit B is a true and correct copy of the 2004 examination transcript of IBM Client Unit Executive Judie Ivancovich.

9.       At the end of IBM's fiscal year 2008, the Defendant became entitled to receive both an Excellence Award and GDP Bonus.  The Excellence Awards are typically paid 2 months in arrears, and the GDP Bonuses are paid shortly after that.  Exhibit B, at page 9.

10.       The Defendant received an Excellence Award for each of the four quarters of 2008.  On February 28, 2009 the Debtor received an $8,000.00 payment from IBM as her Excellence Award for the 4th quarter of 2008.

11.       On March 15, 2009 the Defendant received a $16,072.00 payment from IBM as her GDP Bonus for the fiscal year of 2008.

12.       Neither payment described above was listed as an asset or potential asset in the Defendant's bankruptcy schedules.

### Defendant's Concealment of Estate Assets

13.       On March 10, 2010 the Trustee sent a letter to the Defendant's attorney, specifically requesting information about the $8,000 Excellence Award paid to Defendant in February of 2009, and for an explanation of the time period for which the payment covered.  A copy of the Trustee's correspondence is attached hereto as Exhibit C.

2

14.     On May 25, 2009 the Defendant responded to the Trustee's March 10, 2009

correspondence.  A copy of the Defendant's response is attached hereto as Exhibit D.

15.     The Defendant's letter began with the following statement:

"Let me begin by explaining that my position at IBM as the Oracle Alliance
Client Executive is NOT a commissionable/incentive based position I am 100%
salary based and I am not customer facing."

See Exhibit D.

This statement is untrue and intentionally misleading.  The Defendant's supervisor was

questioned regarding Defendant's compensation structure and testified the following under oath:

| | |
|---|---|
| Q: | Are you familiar with Ms. Klein-Swanson's compensation package? |
| A: | Yes. |
| Q: | And how is that structured? |
| A: | Well, it depends on which year you want to talk about. |
| Q: | How about starting right now, how about right now and then we can move backwards. |
| A: | Okay.  We're on a salary plus bonus compensation plan. |
| Q: | And was that the same structure for 2010? |
| A: | Yes. |
| Q: | How about 2009? |
| A: | Each year is the same, it's base plus commission, but how the commission is structured and how bonuses that we are eligible for can change depending upon the year.  So since she's been employed or since she's worked for me, she has been on a base plus commission plan. |
| Q: | Okay.  So it would be inaccurate to say that she's straight salary? |
| A: | That's correct. |

Exhibit B, at pages 5-6.

16.     The Defendant's May 25, 2009 letter proceeds to provide the Trustee with a

response to his inquiry regarding the time period for which the $8,000 payment was made:

"In early February 2009 I successfully coordinated a team of technologist and
consultants to develop a migration plan/methodology for JDE legacy clients.  This
solution will be rolled out to the IBM sales teams in early July 2009.  The
Excellence Award was announced to me on Monday – 2/16/09 on my America's
Alliance cadence call with my Manager."

Exhibit D.

Once again the Defendant's statement is misleading.  The Debtor in fact became eligible to

receive the $8,000 Excellence Award as of December 31, 2008.

> Q:    Okay.  If we can move on to the next page, referencing the fourth quarter,
>        what was Mrs. Klein-Swanson's excellence award for the fourth quarter of
>        2008?
> A:    The $8,000 amount.
> Q:    And just to verify, was the $8,000 excellence award compensation for
>        services performed by Michelle Klein-Swanson in 2008?
> A:    She would not have received fourth quarter payment in the fiscal year of
>        '08, she would have received it in '09.
> Q:    Yeah, but going back to my question, the $8,000, is that payment
>        compensation for services provided by Michelle Swanson in 2008?
> A:    Yes.
> Q:    Okay.  So it's not attributable to any work that she would have performed
>        in 2009, correct?
> A:    No, correct.

Exhibit B.

17.    Unknown to the Trustee at the time of his March 10, 2009 letter was the fact that

the Debtor was eligible to, and did receive, a GDP Bonus for work performed in 2008.  The GDP

Bonus was paid to the Defendant on March 15, 2010 and was in the amount of $16,072.00.

18.    The $16,072 GDP Bonus was also attributable to services performed pre-peition:

> Q:    Okay.  But in regards to the onetime annual payment that they receive,
>        what was Michelle Klein-Swanson's onetime annual bonus in 2008 – for
>        2008?
> A:    Her payment for 2008?  Oh, it's right here.  I think it says 16,072.
> Q:    Okay.  So then the 16,072  received as her 2008 GDP annual bonus was
>        compensation for services performed by Michelle Klein-Swanson in
>        2008?
> A:    Correct.
> Q:    So that $16,072 payment is not attributable to any work performed in
>        2009?
> A:    The correct.

Exhibit B at pages 17-18.

19.    Although the Defendant's May 25, 2009 letter was sent to the Trustee after she

had received her 2008 GDP Bonus of $16,072, no mention of the payment was included in the

Defendant's correspondence.

20.     Defendant was fully aware of her eligibility and likelihood of receiving both her quarterly Excellence Award and GDP Bonus.

> Q:     Maybe I can clarify it or simplify it.  For purposes of Michelle Klein-Swanson, as long as she's been working underneath you, have these programs been in place?
> A:     Yes.
> Q:     The GDP propgrams?
> A:     Yes.
> Q:     And when she started working for you, was she notified of these programs?
> A:     Yes.
> Q:     So Michelle Klein-Swanson was aware, from the time she started working for you in October of 2007, that she was eligible to receive a quarterly excellence award?
> A:     Yes.
> Q:     And then, also, she was aware that she was eligible to receive an annual growth driven profit payment?
> A:     Yes.

Exhbit B, at Page 21.

## COUNT 1
### Conversion

21.     Plaintiff restates, realleges, and adopts by reference the allegations herein contained in paragraphs 1-20.

22.     The $8,000 Excellence Award and $16,072 GDP Bonus are attributable to work performed prior to the Debtor's filing and are accordingly property of the estate pursuant to 11 U.S.C. §541.

23.     Defendant has willfully interfered with the Plaintiff's possession and ownership of the $8,000 Excellence Award and $16,072 GDP Bonus.

24.     The Defendant has spent or wasted the $8,000 Excellence Award and $16,072 GDP Bonus.

25.     The Trustee seeks Judgment against the Defendant in the amount of $24,072.

## COUNT II
### Civil Theft under Minn. Stat. §604.14

26.    Plaintiff restates, realleges, and adopts by reference the allegations herein contained in paragraphs 1-25.

27.    The $8,000 Excellence Award and $16,072 GDP Bonus are property whose physical location can be changed.

28.    The Debtor's bankruptcy estate was the owner of the $8,000 Excellence Award and $16,072 GDP Bonus at the time of their conversion.

29.    Defendant Michelle Ann Klein-Swanson intentionally and without claim or right concealed and retained possession of the $8,000 Excellence Award and $16,072 GDP Bonus without the Trustee's knowledge or consent, with the intent to deprive the Trustee permanently of possession thereof.

30.    The intentional retention and concealment of the $8,000 Excellence Award and $16,072 GDP Bonus constitutes theft under Minnesota law.

31.    Defendant Michelle Ann Klein-Swanson is liable to the Trustee under Minn. Stat. §604.14.

32.    Plaintiff seeks a money judgment against Defendant Michelle Ann Klein-Swanson in the amount of $48,144 arising from civil theft damages under Minn. Stat. §604.14.

## COUNT III
### Theft and Treble Damages under Minn. Stat. § 548.05

33.    Plaintiff restates, realleges, and adopts by reference the allegations herein contained in paragraphs 1-32.

34.    Defendant has committed a theft of bankruptcy estate property as detailed in Paragraphs 1-20 of this Complaint.

35.    The Plaintiff may recover treble damages pursuant to Minn. Stat. § 548.05.

36.    The Plaintiff is entitled to a judgment for damages, in an amount of $72,216.00

## COUNT IV
### Avoidable Post Petition Transfer Pursuant to 11 U.S.C. § 549

37.  Plaintiff restates, realleges, and adopts by reference the allegations herein contained in paragraphs 1-36.

38.  The Defendant came into possession of Estate assets post-petition and spent or wasted the assets with no claim of right.

39.  The Defendant is the party which has benefited from the post-petition transfer of Estate funds in the amount of $24,072 and the Trustee is entitled to recover that amount from the Defendant as an unauthorized transfer pursuant to 11 U.S.C. §§ 549, and 550.

## COUNT V
### Revocation of Discharge under 11 U.S.C. § 727(d)(2)

40.  Plaintiff restates, realleges, and adopts by reference the allegations herein contained in paragraphs 1-39.

41.  The Trustee's request for a revocation of discharge is timely pursuant to 11 U.S.C. §727(e)(2)(B) as this case has not been closed.

42.  As described in Paragraphs 6-20 above, the Defendant had knowledge of her right to acquire an asset of the estate, acquired the estate asset post-petition, and knowingly and fraudulently failed to report the acquisition or her entitlement to such property to the Trustee.

43.  Even when specifically questioned about the $8,000 Excellence Award the Defendant provided the Trustee with false and misleading explanations to perpetuate her theft of the assets.

44.  Plaintiff seeks revocation of the Defendant's discharge pursuant to 11 U.S.C. § 727(d)(2).

WHEREFORE, the Trustee requests judgment of the court as follows:

1.  Entering judgment against the Defendant Michelle Ann Klein-Swanson pursuant to Count I in the amount of $24,072.

2.      Entering a money judgment against Defendant Michelle Ann Klein-Swanson pursuant to Count II in the amount of $48,144 pursuant to Minn. Stat. §604.14.

3.      Entering a money judgment against Defendant Michelle Ann Klein-Swanson pursuant to Count III in the amount of $72,216.00.

4.      Entering a money judgment against Defendant Michelle Ann Klein-Swanson pursuant to Count IV in the amount of $24,072.

5.      Entering an order revoking the Debtor's discharge.

6.      Awarding the Plaintiff his costs and disbursements in this action.

7.      Such other and further relief as the court deems just and equitable.


**FULLER, SEAVER & RAMETTE, P.A.**


Dated:  February 18, 2011                    By:   /e/ Matthew D. Swanson
                                                          Matthew D. Swanson              390271
                                                          12400 Portland Avenue South, Suite 132
                                                          Burnsville, MN 55337
                                                          (952) 890-0888

                                                          Attorneys for Plaintiff

B6B (Official Form 6B) (12/07)

In re  **Scott Lawrence Swanson,**
**Michelle Ann Klein-Swanson**

Case No. _____**09-40290**_____

Debtors

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Checking account- Think Federal Credit Union | J | 1,242.00 |
| | | | Checking account- M&I Bank | J | 3,455.00 |
| | | | Checking account- Wings Financial Credit Union | H | 900.00 |
| | | | Checking account- Associated Bank | J | 50.00 |
| | | | Savings account- Wings Financial Credit Union | J | 50.00 |
| | | | Savings account- Think Federal Credit Union | J | 0.00 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | | Household goods | J | 5,600.00 |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | | Personal clothing | J | 700.00 |
| 7. | Furs and jewelry. | | Jewelry, including wedding bands | W | 1,350.00 |
| | | | Jewelry, including wedding band and Rolex watch | H | 1,375.00 |
| | | | (2) fur coats | W | 325.00 |
| 8. | Firearms and sports, photographic, and other hobby equipment. | | Camera | J | 300.00 |
| | | | (3) sewing machines | W | 200.00 |

Sub-Total >   **15,547.00**
(Total of this page)

__4__  continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037



EXHIBIT A



Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **Scott Lawrence Swanson,**
      **Michelle Ann Klein-Swanson,**
                                Debtors

Case No.    **09-40290**

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | Cash value of (1) life insurance policy | W | 416.00 |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | Northwest Airlines Corp. 401(K) retirement plan, ERISA-qualified, not part of the bankruptcy estate-- estimate value | H | 273,794.00 |
| | | Individual Retirement Account (Charles Schwab) | H | 328.00 |
| | | IBM Corporation 401(K) retirement plan, ERISA-qualified, not part of the bankruptcy estate-- estimated value | W | 151,762.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | 100% stock ownership of Yarn, Inc. Business has terminated operation and no accounts receivable remain. Value listed is for residual inventory, office equipment and supples. all of which may be subject to a security agreement in favor of Drake Bank. | J | 2,050.00 |
| | | Stock held in IBM Corporation | W | 1,264.00 |
| | | 100% stock ownership of Moon Cake, Inc. Business has terminated operation and no assets or accounts receivable remain. | J | 0.00 |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |

Sub-Total >       429,614.00
(Total of this page)

Sheet  **1**  of  **4**  continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **Scott Lawrence Swanson,**                                    Case No._____**09-40290**_____
      **Michelle Ann Klein-Swanson**

_____,
                                Debtors

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2008 Toyota FJ Cruiser automobile (21,000 miles) | J | 18,290.00 |
| | | 2002 Volkswagen Beetle (58,000 miles) | J | 6,655.00 |
| | | Utility trailer | J | 500.00 |
| 26. Boats, motors, and accessories. | | Sea Ray boat, motor and trailer | J | 4,500.00 |

                                                    Sub-Total >        29,945.00
                                                (Total of this page)

Sheet __**2**__ of __**4**__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re **Scott Lawrence Swanson,**
**Michelle Ann Klein-Swanson,**
                                                    Case No. _____**09-40290**_____
                                          ,
                                Debtors
## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| | | **Kayak and row boat** | J | 250.00 |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | | **Guitar** | W | 350.00 |
| | | **Piano** | W | 500.00 |
| | | **Hand tools** | J | 300.00 |
| | | **Riding lawn mower** | J | 150.00 |
| | | **Laptop computer** | W | 150.00 |
| | | **Kiteboard** | J | 525.00 |
| | | **Holiday decorations** | J | 200.00 |
| | | **2008 federal and state tax refunds** | W | Unknown |
| | | **Wages earned but unpaid as of filing date, net-- estimated** | H | 3,000.00 |
| | | **Wages earned but unpaid as of filing date, net-- estimated** | W | 3,200.00 |
| | | **Snowblower** | J | 75.00 |
| | | **Notes payable from Yarn, Inc. to debtors for owners' contributions in the amount of $848,999.00.** | J | 0.00 |
| | | Sub-Total > (Total of this page) | | 8,700.00 |

Sheet __3__ of __4__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037                     Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re   **Scott Lawrence Swanson,**                        Case No.    __09-40290__
          **Michelle Ann Klein-Swanson**

                             Debtors

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| | | **Notes payable from Moon Cake, Inc. to debtors for owners' contributions in the amount of $55,00.0** | **J** | **0.00** |

|  | Sub-Total > | **0.00** |
|---|---|---|
|  | (Total of this page) | |
|  | Total > | **483,806.00** |

(Report also on Summary of Schedules)

Sheet __4__ of __4__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037               Best Case Bankruptcy

B6C (Official Form 6C) (12/07)

In re    **Scott Lawrence Swanson,**               Case No.   **09-40290**
        **Michelle Ann Klein-Swanson**

Debtors

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:    ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                 $136,875.
■ 11 U.S.C. §522(b)(2)
☐ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** | | | |
| Homestead located at 16900 Weaver Lake Drive, Maple Grove, MN, legally described as follows: Torrens Cert. #823460, Tract (Lot) G, Registered Land Survey No. 1288, according to the plat thereof on file and record in the office of the Registrar of Titles, in and for Hennepin County, Minnesota. | 11 U.S.C. § 522(d)(1) | 5,000.00 | 385,000.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| Checking account- Think Federal Credit Union | 11 U.S.C. § 522(d)(5) | 1,242.00 | 1,242.00 |
| Checking account- M&I Bank | 11 U.S.C. § 522(d)(5) | 3,455.00 | 3,455.00 |
| Checking account- Wings Financial Credit Union | 11 U.S.C. § 522(d)(5) | 900.00 | 900.00 |
| Checking account- Associated Bank | 11 U.S.C. § 522(d)(5) | 50.00 | 50.00 |
| Savings account- Wings Financial Credit Union | 11 U.S.C. § 522(d)(5) | 50.00 | 50.00 |
| Savings account- Think Federal Credit Union | 11 U.S.C. § 522(d)(5) | 0.00 | 0.00 |
| **Household Goods and Furnishings** | | | |
| Household goods | 11 U.S.C. § 522(d)(3) | 5,600.00 | 5,600.00 |
| **Wearing Apparel** | | | |
| Personal clothing | 11 U.S.C. § 522(d)(3) | 700.00 | 700.00 |
| **Furs and Jewelry** | | | |
| Jewelry, including wedding bands | 11 U.S.C. § 522(d)(4) | 1,350.00 | 1,350.00 |
| Jewelry, including wedding band and Rolex watch | 11 U.S.C. § 522(d)(4)<br>11 U.S.C. § 522(d)(5) | 1,350.00<br>25.00 | 1,375.00 |
| (2) fur coats | 11 U.S.C. § 522(d)(5) | 325.00 | 325.00 |
| **Firearms and Sports, Photographic and Other Hobby Equipment** | | | |
| Camera | 11 U.S.C. § 522(d)(5) | 300.00 | 300.00 |
| (3) sewing machines | 11 U.S.C. § 522(d)(5) | 200.00 | 200.00 |
| **Interests in Insurance Policies** | | | |
| Cash value of (1) life insurance policy | 11 U.S.C. § 522(d)(8) | 416.00 | 416.00 |
| **Interests in IRA, ERISA, Keogh, or Other Pension or Profit Sharing Plans** | | | |
| Individual Retirement Account (Charles Schwab) | 11 U.S.C. § 522(d)(12) | 328.00 | 328.00 |

   **1**   continuation sheets attached to Schedule of Property Claimed as Exempt

B6C (Official Form 6C) (12/07) -- Cont.

In re   **Scott Lawrence Swanson,**          Case No. _____09-40290_____
        **Michelle Ann Klein-Swanson,**
_____,
                    Debtors

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT
### (Continuation Sheet)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Stock and Interests in Businesses** | | | |
| Stock held in IBM Corporation | 11 U.S.C. § 522(d)(5) | 1,264.00 | 1,264.00 |
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| 2008 Toyota FJ Cruiser automobile (21,000 miles) | 11 U.S.C. § 522(d)(2) | 1.00 | 18,290.00 |
| 2002 Volkswagen Beetle (58,000 miles) | 11 U.S.C. § 522(d)(2) | 2,411.00 | 6,655.00 |
| Utility trailer | 11 U.S.C. § 522(d)(5) | 500.00 | 500.00 |
| **Boats, Motors and Accessories** | | | |
| Sea Ray boat, motor and trailer | 11 U.S.C. § 522(d)(5) | 3,500.00 | 4,500.00 |
| Kayak and row boat | 11 U.S.C. § 522(d)(5) | 250.00 | 250.00 |
| **Other Personal Property of Any Kind Not Already Listed** | | | |
| Guitar | 11 U.S.C. § 522(d)(5) | 350.00 | 350.00 |
| Piano | 11 U.S.C. § 522(d)(5) | 500.00 | 500.00 |
| Hand tools | 11 U.S.C. § 522(d)(5) | 300.00 | 300.00 |
| Riding lawn mower | 11 U.S.C. § 522(d)(5) | 150.00 | 150.00 |
| Laptop computer | 11 U.S.C. § 522(d)(5) | 150.00 | 150.00 |
| Kiteboard | 11 U.S.C. § 522(d)(5) | 525.00 | 525.00 |
| Holiday decorations | 11 U.S.C. § 522(d)(5) | 200.00 | 200.00 |
| 2008 federal and state tax refunds | 11 U.S.C. § 522(d)(5) | 1,600.00 | Unknown |
| Wages earned but unpaid as of filing date, net-- estimated | 11 U.S.C. § 522(d)(5) | 3,000.00 | 3,000.00 |
| Wages earned but unpaid as of filing date, net-- estimated | 11 U.S.C. § 522(d)(5) | 3,200.00 | 3,200.00 |
| Snowblower | 11 U.S.C. § 522(d)(5) | 75.00 | 75.00 |
| | Total: | 39,267.00 | 441,200.00 |

Sheet __1__ of __1__ continuation sheets attached to the Schedule of Property Claimed as Exempt

Copyright (c) 1996-2008 - Best Case Solutions - Evanston, IL - (800) 492-8037            Best Case Bankruptcy

Page 1

```
 1              UNITED STATES BANKRUPTCY COURT
 2                 DISTRICT OF MINNESOTA
 3    ----------------------------------------------
      In re:
 4
      Scott L. Swanson & Michelle Klein-Swanson,    BKY No. 09-40290
 5
                          Debtors.
 6
      ----------------------------------------------
 7
 8                 DEPOSITION and EXHIBITS of JUDIE IVANCOVICH,
 9    taken via telephone in the above-styled cause pursuant to Notice
10    at Suite 132, 12400 Portland Avenue South, City of Burnsville,
11    County of Dakota, State of Minnesota, before Colleen M. Sichko,
12    Registered Professional Reporter and notary public, on the 26th
13    day of January, 2011, commencing at approximately 4:00 p.m.
14                       *    *    *
15
16
17
18
19
20
21
22
23
24
25
```

Page 2

```
 1    APPEARANCES:
 2                 MATTHEW D. SWANSON, Attorney at Law, FULLER,
 3    SEAVER & RAMETTE, Suite 132, 12400 Portland Avenue South,
 4    Burnsville, Minnesota 55337, appeared as counsel for and
 5    on behalf of the trustee.
 6                 STACEY BLAUSTEIN, Attorney at Law, IBM
 7    Corporation, 1 North Castle Drive, 1A-73 MD NC-107,
 8    Armonk, New York 10501, appeared via telephone as counsel
 9    for and on behalf of the deponent.
10
11
12
13
14
15
16
17
18
19
20
21
22
23             (Whereupon, the following proceedings were
24    duly had, and entered of record, to-wit:)
25
```

Page 3

```
 1                        I N D E X
 2    WITNESS                                         PAGE
 3    JUDIE IVANCOVICH
 4         Examination by Mr. Swanson                    4
 5    IVANCOVICH DEPOSITION EXHIBITS                  MARKED
 6    1 - Team Based Decision Making Worksheet on       10
 7         Compensation
 8    2 - 2008 Excellence Awards                        14
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1                  JUDIE IVANCOVICH,
 2             having been first duly sworn, was
 3         examined and testified on her oath as follows:
 4                    EXAMINATION
 5                    EXAMINATION
 6    BY MR. SWANSON:
 7    Q  All right.  Ms. Ivancovich, can you state your name again
 8       for the record?
 9    A  Judie Ivancovich.
10    Q  And where are you currently employed?
11    A  IBM.
12    Q  And what is your position at IBM?
13    A  I'm a CUE, client unit executive.
14    Q  And how long have you held that position?
15    A  This current position, probably ten, twelve years.
16    Q  Okay.  And how long have you been employed at IBM?
17    A  Twenty-six years.
18    Q  Just before we begin, have you ever been deposed before?
19    A  No.
20    Q  Okay.  You do realize that you are testifying under oath,
21       correct?
22    A  Yes.
23    Q  And because we are over the telephone, if you can just
24       remember to make all of your answers audible, that would
25       be great.  Also, if you could just try to wait until I ask
```

EXHIBIT B

Page 5

1  a question or complete my question before you answer it,
2  that would also be helpful. Is that okay?
3  A  Sure.
4  Q  Okay. Are you personally familiar with Mrs. Michelle
5  Klein-Swanson?
6  A  She works for me, so the answer is yes.
7  Q  So you know who she is, right?
8  A  Yes.
9  Q  And how do you know her?
10 A  She's an employee of mine.
11 Q  And can you describe what you mean by "employee"?
12 A  She's on a team that I manage.
13 Q  Okay. And what position does she have? What is her role?
14 A  She's a sales leader.
15 Q  And how long has she worked for you?
16 A  She's worked for me since October 1st of 2007.
17 Q  Has she held the same position underneath you since that
18 date?
19 A  Yes.
20 Q  Are you familiar with Ms. Klein-Swanson's compensation
21 package?
22 A  Yes.
23 Q  And how is that structured?
24 A  Well, it depends on which year you want to talk about.
25 Q  How about starting right now, how about right now and then

Page 6

1  we can move backwards.
2  A  Okay. We're on a salary plus bonus compensation plan.
3  Q  And was that the same structure for 2010?
4  A  Yes.
5  Q  How about 2009?
6  A  Each year is the same, it's base plus commission, but how
7  the commission is structured and how bonuses that we are
8  eligible for can change depending upon the year. So since
9  she's been employed or since she's worked for me, she has
10 been on a base plus commission plan.
11 Q  Okay. So it would be inaccurate to say that she's
12 straight salary?
13 A  That's correct.
14 Q  Do you have in front of you the documents that I sent to
15 you?
16 A  I do.
17 Q  And are they marked? Are they the numbered copies?
18 A  Yes, but I need to pull them up. Yes, I have them. Just
19 give me one second and I will bring them up.
20    MR. SWANSON: And Ms. Blaustein, do you have
21 a copy of those, as well?
22    MS. BLAUSTEIN: Yes.
23    MR. SWANSON: Okay?
24    THE WITNESS: Okay, I have it in front of me
25 now.

Page 7

1  BY MR. SWANSON:
2  Q  Okay. When you're saying that it's base plus commission
3  or the salary plus a bonus, the bonuses, what are the --
4  A  The appropriate -- just so we're clear, the appropriate
5  terminology to use is "base plus commissions." That would
6  be an appropriate terminology.
7  Q  Okay. So what are the available commissions?
8  A  It is based on -- the commissions are based on a GDP
9  payment, and the GDP is based quarterly, as well as
10 annually.
11    MS. BLAUSTEIN: And, Judie, I'm just going to
12 instruct you, because Matthew Swanson is not familiar with
13 all the IBM acronyms, if you could just explain what they
14 are when you mention GDP.
15    THE WITNESS: Okay. "GDP" is a gross driven
16 profit plan and, basically, what it is is that it is based
17 on -- for the yearly funding, it is based on an employee's
18 PBC rating, and the PBC rating is personal business
19 commitment rating. So it's an overall rating that is an
20 annual rating.
21    The GDP is based on an employee's PBC rating
22 and the funding; and the funding is based on year over
23 year growth and IBM's companywide profit on pretax income
24 combined with actual year over year revenue growth; and
25 then, basically, what happens is, depending upon that

Page 8

1  funding, that money, that funding then comes to each team,
2  which then I get a "bucket of money" that is then -- I am
3  given a certain, you know, dollar amount and then, once
4  I'm given that dollar amount, based on the funding that I
5  just defined, once I have that dollar amount, then
6  depending upon certain criteria, Michelle will get her GDP
7  funding, as well as my other employees.
8  BY MR. SWANSON:
9  Q  Okay. And did you say that there's a yearly one and then
10 a quarterly one?
11 A  Correct.
12 Q  Okay. And does the quarterly one -- is that the
13 excellence award?
14 A  Yeah. That's much more -- correct, that's much more of an
15 excellence award that -- well, you have it in your
16 exhibits, but, basically, the excellence awards are -- can
17 be -- so, here's some examples of contributions. They
18 would be significant assistance in a sale, sustained high
19 client satisfaction, achieving of a key critical
20 milestone, delivering process improvement. So those are
21 certain types of contributions that would be looked at in
22 order to determine the funding that Michelle will get each
23 quarter and that decision is based on her performance over
24 the quarter.
25 Q  Okay.

Page 9

1  A   And by the way, I have one other thing that I would also
2      like to say, that it is not -- it should not be assumed
3      that Michelle will get this quarterly. She is eligible
4      for it and, again, this is all confidential, so
5      Michelle -- you know, this is not something we talk about
6      with our employees, but there are employees that will get
7      skipped. So they might get a bonus first quarter and
8      second quarter, they may get nothing in third quarter, and
9      they may get something in fourth quarter. So it is not an
10     entitlement amount of money.
11 Q   How does the process work as far as, you know, you said
12     it's not a guarantee --
13 A   Mm-hmm.
14 Q   -- but when is that determined?
15 A   When the quarter closes. So let's say, for fourth quarter
16     for 2010, so we finally have closed the quarter for 4Q,
17     they will receive payments two months in arrears and it's
18     determined based on an overall team. So we're on, you
19     know, my team, but then several other teams are associated
20     with it and, as a team, we then determine who will get
21     skipped and who doesn't based on the criteria that was
22     given; and that criteria might be based on sales
23     initiatives or revenue numbers or whatever it might be
24     that has been established for that quarter. So sometimes
25     the quarters will be the same and other times the

Page 10

1      initiatives might be different.
2  Q   Okay. So you'll discuss that number or you will discuss
3      the allocation of the bucket with the team members that
4      are going to receive that disbursement?
5  A   No. When Michelle gets the amount, she's told an amount.
6      She doesn't know how that relates to anyone else on the
7      team. She doesn't know -- you know, I will say, You get X
8      number of dollars and this is based on your excellence in
9      this area or this area or this area and, you know, for
10     next quarter, we're going to be focusing on A, B and C, so
11     I want to make sure that you are, you know, focusing your
12     efforts on those things because those are the things that
13     we're going to be looking at as a team and that's how, you
14     know, your performance will be viewed.
15 Q   And just to clarify, your year-end, is that December 31st?
16 A   Yes.
17 Q   Okay. I'm going to have the court reporter mark for
18     identification what you have in front of you as Exhibit
19     Number 3.
20            (Ivancovich Deposition Exhibit 1 was marked
21            for identification by the court reporter and
22            attached hereto.)
23 BY MR. SWANSON:
24 Q   All right. And this is a document that I received
25     pursuant to a subpoena served on IBM. Do you recognize

Page 11

1      this document?
2  A   Yes, it's mine.
3  Q   You created this document?
4  A   I did.
5  Q   And can you explain what it is?
6  A   Well, I need to open up my own document because this is
7      very difficult to read, so give me a second. Okay, now
8      I'm looking at my own document that you scanned, so;
9      basically, you see that there's five people that work for
10     me. Michelle is, obviously, in the middle and then there
11     were five different categories to evaluate the team's
12     performance and our STG number, which is our hardware
13     number -- I mean, I'd have to go back, but we must have
14     stunk it up big time, so that's why there's a 2 there. So
15     we must have not done well at all for that 2008 around our
16     hardware number, so that's why the team is rated
17     consistently at 2.
18            Then the signings number, which is a services
19     number, we must have made the numbers, so that's why
20     everybody is a 3. So those top two lines where it says
21     "Numbers," because Michelle and all five of them are on a
22     team quota, that's why you see everyone is rated exactly
23     the same when it comes to those top two line items. Then
24     when it gets to GBS, which stands for Global Business
25     Services, which is IBM's consulting division, and STG,

Page 12

1      which is our hardware division, and Solutions Teaming and
2      Partnership, that would be associated with our partner
3      because we have -- that's our job, is to worry about one
4      partner.
5            So the three next areas are areas where
6      Michelle was rated against her peers. Those are all there
7      in those specific categories, but then in the subcategory
8      where it says "Scope," and then the bottom is "Alliance
9      Satisfaction" and that is an overall number that we have.
10     Again, we have one number, which is considered an
11     alliance, and that is a satisfaction rating. So it was a
12     very high satisfaction rating that came from the partner
13     and that's why it's rated as high.
14 Q   And what are these numbers used for?
15 A   They are used as a way to -- as a metric to see where she
16     is as far as performance related to the other four members
17     on the team. You can see at the bottom where it says
18     "Overall Total," she has a 3, somebody else has a 2.9,
19     somebody else has a 3.4, et cetera, et cetera. So you can
20     see this is when she was very new to the team, but you can
21     see where she has a 3 and so, when I look at a weighted
22     average, I can see that she's -- that there's -- one,
23     two -- three people ahead of her, so her compensation will
24     be -- will show accordingly. So if everybody -- that way
25     everybody is not weighted the same and I have a way of

Judie Ivancovich                    **CondenseIt™**                    January 26, 2011

**Page 13**

1 measuring, rating and ranking, if you will, everyone on
2 the team. So in a nutshell, what are these numbers used
3 for? Rating and ranking.
4 Q Do these relate, then, to the excellence awards at all?
5 A Yes. Then these will be determined -- now, this that
6 we're looking at for this exhibit is an annual view.
7 Q Okay.
8 A It's a 2008 view, so this would have been used for the
9 overall annual GDP plus payment.
10 Q Okay. Would you also have a breakdown like this review
11 for each quarter?
12 A I know I had one for 2007. I don't know if I've kept it.
13 Some of the stuff I do in paper and some of it -- I would
14 have to really start searching for it. Do I have it
15 readily available for you? No.
16 Q Okay. And just to be clear, you said that this is an
17 annual one, so this would be used for the onetime growth
18 driven profit payment that's only made annually?
19 A Correct. This spreadsheet was for that purpose, yes.
20 Q So there would be something, some sort of different
21 analysis for the quarterly payments?
22 A The answer is yes, but it would be -- for this year, it
23 would have been based in these same categories.
24 Q Okay.
25      (Ivancovich Deposition Exhibit 2 was marked

**Page 14**

1      for identification by the court reporter and
2      attached hereto.)
3 BY MR. SWANSON:
4 Q This is also a document I received from IBM. Do you
5 recognize this document?
6 A Yes. It's my document.
7 Q So you created this document?
8 A I did.
9 Q And what is this document?
10 A This is from 2008 and this is first quarter and second
11 quarter payment for excellence awards for 2008, and there
12 is also a rating and ranking that's right there -- one,
13 two, three, four, five, six -- seven columns over -- wait,
14 sorry. Yeah, seven columns over it shows a rating,
15 ranking if you will, and then the column to the right of
16 it shows the excellence award payment for the first
17 quarter and then, if you keep going to the right, it shows
18 second quarter.
19 Q Okay. So, specifically looking at Michelle
20 Klein-Swanson's column or row rather --
21 A Mm-hmm.
22 Q -- where it states, under the first column quarter one of
23 2008 excellence awards, there's a dollar amount there,
24 3,827. Is that the excellence award she was awarded for
25 her work in the first quarter?

**Page 15**

1 A Yes.
2 Q And then moving on further down that row under the second
3 quarter of '08 excellence awards, it has a number listed,
4 5,400. Is that the dollar amount she would have received for
5 performing her work in the second quarter -- I apologize,
6 it says $6,000?
7 A Right, correct; and yes, it's the $6,000, yes.
8 Q Okay. Moving on to the second page of that exhibit, under
9 Michelle Klein-Swanson's row again, further on the right
10 side of the page where it says --
11 A Hang on, I gotta rotate this so I can see it. Okay.
12 Well, I'm just going to look at it funny. Go ahead.
13 Q What was the total paid to Michelle Klein-Swanson for her
14 services performed in '08, third quarter of 2008?
15 A That was the 5,722 number.
16 Q Did you say fifty-seven or sixty-seven twenty-two?
17 A Oh, excuse me, 6,722.
18 Q Okay. If we can move on to the next page, referencing the
19 fourth quarter, what was Mrs. Klein-Swanson's excellence
20 award for the fourth quarter of 2008?
21 A The $8,000 amount.
22 Q And just to verify, was the $8,000 excellence award
23 compensation for services performed by Michelle
24 Klein-Swanson in 2008?
25 A She would not have received fourth quarter payment in the

**Page 16**

1 fiscal year of '08, she would have received it in '09.
2 Q Yeah, but going back to my question, the $8,000, is that
3 payment compensation for services provided by Michelle
4 Swanson in 2008?
5 A Yes.
6 Q Okay. So it's not attributable to any work that she would
7 have performed in 2009, correct?
8 A No, correct.
9 Q Okay. And moving on to the next page of that same
10 exhibit, moving over to the -- what I believe we discussed
11 was the single annual payment. What was Michelle
12 Klein-Swanson's growth driven payment, her annual payment
13 for 2008?
14 A I don't think it's there. 3Q, 4Q -- okay, ask me the
15 question one more time.
16 Q Just to make sure we're on the same page, it should be --
17 at the top of the page it says "2007," or kind of at the
18 top of the page. The second column should be the "2008
19 GDP Annual Bonus." Are you on the same page?
20 A Oh, yeah, okay. This is really not a good way to be
21 looking at spreadsheets.
22 Q Are you on the same page that I am?
23 A I think so, hang on. No, I don't think -- I'm on the PDF
24 file that you sent as page 12 of 22. Are you on a
25 different page?

SHADDIX & ASSOCIATES   (952)888-7687                    Page 13 - Page 16

Judie Ivancovich      CondenseIt™      January 26, 2011

**Page 17**

1 Q It should be page 4 of Exhibit 4.

2 A Page 4 of Exhibit 4? Well, the problem is, when I look at

3    some of these pages, they are blank, so page 4 to you and

4    page 4 to me are probably different because several of

5    these pages are completely blank. Page 11 is blank.

6 Q It would be the fourth nonblank page of Exhibit 4, then.

7    Maybe I can ask the question and maybe you know even

8    without referencing the document or maybe you can tell me

9    just by referencing your documents there. Do you know

10    what Michelle Klein-Swanson's 2008 GDP annual bonus was?

11 A No. Okay, I'm going to try to go and try to read this one

12    more time because some of these are in portrait, some of

13    them are in landscape and they are very difficult to read,

14    so you gotta be patient here. Okay, so I'm on Exhibit 4

15    and you want me on the fourth page of Exhibit 4?

16 Q That's correct.

17 A Okay, and tell me what you see at the top.

18 Q It's really a partial page — not a partial page, but the

19    spreadsheet only covers part of the page and it has a

20    "2007" above the portrait.

21 A So it doesn't say 4Q '08 at the top?

22 Q I'm not seeing that. Here, hold on one second.

23 A Oh, wait, I think I see what you see. Hang on, I see it.

24    It says "2007" on the right.

25      MS. BLAUSTEIN: Matthew, are you talking

**Page 18**

1   about Exhibit 4?

2      MR. SWANSON: Yes.

3      MS. BLAUSTEIN: Yeah, it's the eighth page of

4   the --

5      THE WITNESS: Yeah, I see it now, but I don't

6    know which one is Michelle's because the far left has been

7    cut off. I don't know what column she's in, I would have

8    to go back and look. I see it says "4Q YTD GDP Plus."

9    Okay, I'm with you.

10 BY MR. SWANSON:

11 Q It's page 14 of 22, if that helps.

12 A Yeah, I'm there.

13 Q And I believe she, in regards to the rows, she's the third

14    one down.

15 A Third one down, okay. So she would have received the

16    40,621.

17 Q Well, that's the total of her excellence awards quarterly

18    and annual, correct?

19 A Yes. That's a year-to-date payment, correct.

20 Q Okay. But in regards to the onetime annual payment that

21    they receive, what was Michelle Klein-Swanson's onetime

22    annual bonus in 2008 -- for 2008?

23 A Her payment for 2008? Oh, it's right here. I think it

24    says 16,072.

25 Q Okay. So then the 16,072 received as her 2008 GDP annual

**Page 19**

1   bonus was compensation for services performed by Michelle

2    Klein-Swanson in 2008?

3 A Correct.

4 Q So that $16,072 payment is not attributable to any work

5    performed in 2009?

6 A The correct.

7 Q And the $16,072 payment is in addition to the $8,000

8    excellence award that was also from quarter -- sorry, the

9    fourth quarter of 2008?

10 A Ask me that question one more time.

11 Q Is this $16,072 payment in addition to her fourth quarter

12    excellence award?

13 A Yes.

14 Q And I know we have touched on this a little bit before,

15    but can you explain how you notify your employees of their

16    right to receive these amounts or these awards?

17 A We -- there is a timeframe when IBM says you can now --

18    basically, what happens is IBM provides us a window that

19    says from this date to this date you are to provide your

20    employees the information regarding their payments and so,

21    when that window opens, I typically do it on the first or

22    second day, I do it on the phone, and I will say, Your

23    amount is such-and-such and it's based on your performance

24    in these areas and it's, you know -- you use it as an

25    opportunity to have a dialog about, you know, what went

**Page 20**

1   well, lessons learned for the quarter or for the year,

2    et cetera, at the same time delivering the message about

3    the amount of the payment.

4 Q And will you communicate to your employees both the

5    excellence award, the quarterly one and the annual one?

6 A Yes.

7 Q And you stated that it's not a guaranteed payment,

8    correct?

9 A Correct.

10 Q Is it typical that they will receive one?

11 A Quarterly or annual, which are you asking?

12    Well, let's discuss the quarterly first.

13 A Is it typical? I would say, out of the four quarters,

14    most often they will receive three out of the four.

15 Q Okay. And for 2008, just to clarify, Michelle

16    Klein-Swanson did receive an excellence -- a quarterly

17    excellence award for each quarter, correct?

18 A Correct.

19 Q And in regards to the annual award, is it typical that

20    your employees will each receive an annual award?

21 A Yes.

22 Q And in regard -- when were these programs started by IBM;

23    do you recall?

24 A I have no idea.

25 Q That may be --

---

**Page 21**

1  A   Hold on one second, I may have that in something that I

2      may have, but let me look to see if I can even answer that

3      question.

4          MS. BLAUSTEIN: Matthew, specifically which

5      program are you talking about?  Are you talking about the

6      payments of --

7  BY MR. SWANSON:

8  Q   Maybe I can clarify it or simplify it.  For purposes of

9      Michelle Klein-Swanson, as long as she's been working

10     underneath you, have these programs been in place?

11 A   Yes.

12 Q   The GDP programs?

13 A   Yes.

14 Q   And when she started working for you, was she notified of

15     these programs?

16 A   Yes.

17 Q   So Michelle Klein-Swanson was aware, from the time she

18     started working for you in October of 2007, that she was

19     eligible to receive a quarterly excellence award?

20 A   Yes.

21 Q   And then, also, she was aware that she was eligible to

22     receive an annual growth driven profit payment?

23 A   Yes.

24 Q   Do you know if Michelle Klein-Swanson received the annual

25     growth driven profit payment or bonus payment for the year

---

**Page 22**

1      2009?

2  A   Yes.

3  Q   Do you know if she is going to receive that same -- is she

4      going to receive the growth driven profit payment or bonus

5      for the year 2010?

6  A   Yes.

7  Q   If you could hold on one second, I just want to make sure

8      I don't have any further questions before I end our call.

9          Do you happen to know what Ms. Michelle

10     Klein-Swanson's growth driven profit payment will be for

11     2010?

12 A   No.

13 Q   Is that something that's still being calculated?

14 A   Yes.

15         MR. SWANSON: Okay.  I have no further

16     questions for you.  I appreciate you taking the time out.

17         And, Stacey -- well, you have the right to

18     read and sign if you like.

19         MS. BLAUSTEIN: Okay.  Can you e-mail me a

20     transcript when you get it, Matt?

21         MR. SWANSON: Yeah, but do you want to read

22     and sign, or are you fine with the transcript as is?

23         MS. BLAUSTEIN: Judie, you're fine with the

24     testimony?

25         THE WITNESS: Yes.

---

**Page 23**

1          MS. BLAUSTEIN: Okay, yeah, I think we can

2      waive that.

3          MR. SWANSON: Okay.

4          MS. BLAUSTEIN: So is that it, Matt?

5          MR. SWANSON: Yeah, we're done.

6          (Deposition concluded at 4:40 p.m.)

---

**Page 24**

1  STATE OF MINNESOTA)
                          Ss.
2  COUNTY OF DAKOTA  )

3          Be it known that I took the deposition of

4  JUDIE IVANCOVICH via telephone on the 26th day of January, 2011,
   at Suite 132, 12400 Portland Avenue South, Burnsville,

5  Minnesota;

6          That I was then and there a Notary Public in
   and for the County of Dakota, State of Minnesota, and that I was

7  duly authorized to administer an oath;

8          That the witness, before testifying, was
   first duly sworn to testify the truth and nothing but the truth;

9          That the testimony was recorded by myself and

10 transcribed into a computer-aided transcript and that the
   deposition is a true record of the testimony given by the

11 witness to the best of my ability;

12         That the cost of the original transcript has
   been charged to the party noticing the deposition, unless

13 otherwise agreed upon by Counsel, and that copies have been made
   available to all parties at the same cost, unless otherwise

14 agreed upon by Counsel;

15         That I am not related to any of the parties
   hereto nor interested in the outcome of the action;

16         That the reading and signing of the

17 deposition by the witness was waived; that the original
   transcript will be retained by Mr. Swanson.

18

19         WITNESS MY HAND AND SEAL THIS 2nd day of
   February, 2011.

20

21

22     _____
       COLLEEN M. SICHKO
       Registered Professional Reporter

23

24                    COLLEEN M SICHKO

25                    NOTARY PUBLIC - MINNESOTA
                      My Comm. Expires Jan 31, 2015

---

*Team Based Decision Making Worksheet on Compensation*
IBM Confidential

**Assessment Criteria:**
Ratings 1 to 5; with 5 being the highest

| Category | Scope | Surace | Farnham |
|---|---|---|---|
| **Numbers** (5 only if on target in all areas) | STG Influence Revenue | 2 | 2 |
| | Signings (GBS, GTS) | 3 | 3 |
| **GBS** | Identification and Validation of Opptys | 4 | 3 |
| **STG** | Install Base Upgrades | 4 | 5 |
| | Percent Blue | 3 | 4 |
| | ISV Growth Initiatives | 4 | 4 |
| **Solutions Teaming and Partnership** | Align Regional VP and ISV Sales Executives | 5 | 3 |
| | Sector Leader Alignment | 1 | 1 |
| | Regional Joint Cadence with ISV | 5 | 4 |
| | General Business | 5 | 4 |
| **Alliance Satisfaction** | Satisfaction | 5 | 5 |
| | Overall Total | 3.727272727 | 3.454545455 |

EXHIBIT 3

Nomonich
EXHIBIT 12.16
DATE
COLLEEN M. SICHKO
COURT REPORTER

| Kersvansen | Blom | Type Table |
|---|---|---|
| 2 | 2 | 2 |
| 3 | 3 | 3 |
| 2 | 3 | 3 |
| 4 | 2 | N/A |
| 4 | 3 | 4 |
| 2 | 2 | 3 |
| 2 | 3 | 3 |
| 1 | 1 | 1 |
| 5 | 5 | 5 |
| 3 | 3 | 5 |
| 5 | 5 | 5 |
| 3 | 2.909090909 | 3.4 |

**IBM CONFIDENTIAL**

| Ivancovich Team | 1Q08 Excellence Awards | 1Q08 % Dept | 1Q08 Award Rank | 1Q08 Salary | 1Q08 Award as % Salary | 1Q08 Salary Rank | 2Q08 Excellence Award @ 85% | 2Q08 Award | 2Q08 % Dept | 2Q08 Award Rank | Monthly Salary as of June 1 | 2Q08 Salary | 2Q08 Award as % 2Q Salary | 2Q08 Salary Rank |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bjorn | 3,717 | 15% | 3 | 37,170 | 10% | 3 | 4,800 | 5,400 | 28% | 2 | 12,638 | 37,418 | 14% | 3 |
| Farnham | 3,976 | 16% | 4 | 27,736 | 14% | 5 | 2,500 | 2,700 | 20% | 5 | 9,485 | 27,976 | 10% | 5 |
| elle Klein-Swanson | 3,827 | 16% | 4 | 38,267 | 10% | 2 | 5,400 | 6,000 | 32% | 1 | 12,756 | 38,267 | 16% | 2 |
| Surace | 8,823 | 36% | 1 | 40,534 | 22% | 1 | 3,700 | 4,300 | 25% | 3 | 13,835 | 40,858 | 11% | 1 |
| | | | | | | | | | | | 13,975 | | | |
| Typher | 4,263 | 17% | 2 | 29,743 | 14% | 4 | 3,276 | 3,600 | 26% | 4 | 10,360 | 30,189 | 12% | 4 |
| Total Ivancovich | 24,605 | 100% | | 173,450 | 14% | | 19,676 | 22,000 | 100% | N/A | 59,075 | 174,708 | 13% | |

Ivancovich
Depo EXHIBIT 2
DATE 1/26/11
COLLEEN M. SICHKO
COURT REPORTER

EXHIBIT 4

| Ivancovich Team | 1H payment | 1H08 % Dept | 1H08 Award Rank | 1H Salary | 1H08 Award as % Salary | Salary Rank | Ivancovich Team | 3Q Salaries | 3Q08 Initial Payment updated with Final Payment | Actual % of payment versus allocated funding | 3Q08 % Dept | 3Q08 Award Rank | 3Q08 Salary |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bjorn | 9,117 | 20% | 3 | 74,588 | 12% | 3 | Bjorn | 37,914 | 6,578 | 34% | 31% | 2 | 37,914 |
| Farnham | 6,676 | 14% | 5 | 55,712 | 12% | 5 | Farnham | 28,456 | 2,238 | 12% | 11% | 4 | 28,456 |
| Michelle Klein-Swanson | 9,827 | 21% | 2 | 76,533 | 13% | 2 | Michelle Klein Swanson | 38,267 | 6,722 | 35% | 32% | 1 | 38,267 |
| | | | | | | | Surace | | | | | | |
| Ray | | | | | | | Ray | 41,925 | 2,516 | 13% | 12% | 5 | 41,925 |
| Typher | 7,863 | 17% | 4 | 59,932 | 13% | 4 | Typher | 31,081 | 3,108 | 16% | 15% | 3 | 31,081 |
| Total Ivancovich | 46,605 | 100% | | 348,157 | 13% | | Total Ivancovich | 177,643 | 21,162 | 109% | 100% | | 177,643 |

## 2008

| Column A:2008 | 4Q08 Salary Rank | 4Q08 Award as % of 4Q Salary | 4Q08 Salary | 4Q08 Award Rank | 4Q08 Award as % of Dept |
|---|---|---|---|---|---|
| Ivancovich Team | | | | | |
| Bjorn | 3 | 15% | 37,914 | | 28% |
| Farnham | 4 | 11% | 28,456 | | 16% |
| Michelle Klein-Swanson | 2 | 21% | 38,267 | | 40% |
| Ray | 1 | 8% | 41,925 | | 16% |
| Typher | | | | | |
| Total Ivancovich | | 14% | 146,562 | | 100% |

## 4Q08

| Actual % of payment versus allocated funding | 4Q08 Initial Payment which will be updated with the Final Payment | 4Q Monthly Salary Payment | 4Q Salary | Ivancovich Team | 3Q08 Salary Rank | 3Q08 Award as % of 3Q Salary |
|---|---|---|---|---|---|---|
| 32% | 5,500 | 12,638 | 37,914 | Bjorn | 3 | 17% |
| 18% | 3,157 | 9,485 | 28,456 | Farnham | 5 | 8% |
| 46% | 8,000 | 12,756 | 38,267 | Michelle Klein-Swanson | 2 | 18% |
| 18% | 5,500 | 13,975 | 41,925 | Surace / Ray / Typher — Total | 1 / 4 | 6% / 10% |
| 114% | 19,857 | 48,854 | 146,562 | Total Ivancovich | | 12% |

Do Not Exceed : $17,357

Total $19,857

To Go −$2,500

| Steps to include 4Q pymt | | | | | | 2007 | Diff |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 3Q YTD will update to 4Q YTD Payment | 2008 GDP Annual Bonus | 4Q YTD GDP Plus | FY08 % Dept | FY08 Award Bank | 2007 Award Payment | Delta 2008 from 2007 |
| 21,195 | 13,649 | 34,844 | | | 27,978 | 6,866 |
| 12,071 | 6,943 | 19,014 | | | 20,236 | (1,222) |
| 24,549 | 16,072 | 40,621 | | | 0 | 40,621 |
| | | | | | 31,061 | (31,061) |
| 5,716 | 5,661 | 10,747 | | | 23,174 | 10,747 |
| 10,971 | | 10,971 | | | | (12,203) |
| 74,501 | 41,695 | 116,196 | 0% | | 102,449 | 13,747 |

## 1Q09

| Ivancovich Team | 1Q Salary | 1Q09 Initial Payment updated with the Final Payment | 1Q09 Award as % Dept | 1Q09 Award Rank | 1Q09 Award as % 1Q Salary | 1Q09 Salary Rank |
|---|---|---|---|---|---|---|
| Bjorn, ███████ | 37,914 | 3152.56 | 53% | 1 | 8% | 2 |
| Grill, ███ | 29,450 | 2800.00 | 47% | 2 | 10% | 3 |
| Klein-Swanson, Michelle | 38,267 | 0.00 | 0% | 3 | 0% | 1 |
| Total Ivancovich | 105,630 | 5952.56 | 100% | | 6% | |

## 2Q09

| Ivancovich Team | 2Q Salary | 2Q09 Initial Payment which will be updated with the Final Payment |
|---|---|---|
| Bjorn, Elizab | 37,914 | 2025.00 |
| Grill, Mary | 29,450 | 1000.00 |
| Klein-Swans | 38,267 | 3827.60 |
| Total Ivancovich | 105,630 | 6852.60 |

## 3Q09

| Ivancovich Team | 3Q Salary | 3Q09 Initial Payment which will be updated with the Final Payment | 3Q09 Award as % Dept | 3Q09 Award Rank | 3Q09 Award as % 3Q Salary | 3Q09 Salary Rank | 1H Award amt | Award Amt YTD | YTD Award as % of YTD Salary | 3Q YTD Salary |
|---|---|---|---|---|---|---|---|---|---|---|
| Bjorn, ██████ | 38,484 | 1928.00 | 30% | 2 | 5% | 2 | 5,178 | $7,106 | 6.2% | $114,312 |
| Grill, ███ | 29,450 | 1200.00 | 19% | 3 | 4% | 3 | 3,800 | $5,000 | 5.7% | $88,349 |
| Klein-Swanson, Michelle | 38,878 | 3236.00 | 51% | 1 | 8% | 1 | 3,828 | $7,064 | 6.1% | $115,411 |
| Total Ivancovich | 106,812 | 6364.00 | 100% | | 6% | | 12,805 | $19,169 | 6.0% | $318,072 |

| 2008 Award as % Dept. | 2009 Award Rank | 2009 Award as % 20 Salary | 2009 Salary Rank |
|---|---|---|---|
| 30% | | 5% | 2 |
| 15% | | 3% | 3 |
| 56% | | 10% | 1 |
| 100% | | 6% | |

# RANDALL L. SEAVER
## UNITED STATES CHAPTER 7 PANEL TRUSTEE

PORTLAND CORPORATE CENTER
12400 PORTLAND AVENUE SOUTH, SUITE 132
BURNSVILLE, MN 55337

Telephone (952) 890-0888
Facsimile (952) 890-0244

March 10, 2009

Joseph L. Kelly
Kelly Law Offices
12400 Portland Avenue South, Suite 180
Burnsville, MN 55337

RE:   Scott Lawrence Swanson and Michelle Ann Klein-Swanson
      BKY No. 09-40290

Dear Joe:

In reviewing the Debtors' financial records, I note that Ms. Klein-Swanson received an $8,000 "Excellence Award" on 2/18/09. Please have her provide me with a written explanation of the basis for that award, and the time period for which it covers. Also, please provide a copy of the company policy that resulted in that award, together with the letter or other documents notifying her of the award and the period of time covered by the award.

Very truly yours,

Randall L. Seaver
Trustee
*rlseaver@fullerseaverramette.com*

RLS:klf

C:\Data\rnndy\Trustee-Mpls\Swanson\ltr to Kelly re award.wpd



# RANDALL L. SEAVER
## UNITED STATES CHAPTER 7 PANEL TRUSTEE

PORTLAND CORPORATE CENTER
12400 PORTLAND AVENUE SOUTH, SUITE 132
BURNSVILLE, MN 55337

Telephone (952) 890-0888
Facsimile (952) 890-0244

*5 - 11 - 09*

March 10, 2009

**THIS IS A FOLLOW-UP ACCORDING TO OUR FILES, WE HAVE NOT RECEIVED A REPLY TO THIS LETTER, YOUR EARLY ATTENTION TO THIS MATTER WILL BE APPRECIATED**

Joseph L. Kelly
Kelly Law Offices
12400 Portland Avenue South, Suite 180
Burnsville, MN 55337

RE:   Scott Lawrence Swanson and Michelle Ann Klein-Swanson
      BKY No. 09-40290

Dear Joe:

In reviewing the Debtors' financial records, I note that Ms. Klein-Swanson received an $8,000 "Excellence Award" on 2/18/09. Please have her provide me with a written explanation of the basis for that award, and the time period for which it covers. Also, please provide a copy of the company policy that resulted in that award, together with the letter or other documents notifying her of the award and the period of time covered by the award.

Very truly yours,

Randall L. Seaver
Trustee
*rlseaver@fullerseaverramette.com*

RLS:klf

C:\Data\anody\Trustee-Mpls\Swanson\ltr to Kelly re award.wpd

May 25, 2009

Mr. Randall Seaver
Trustee
Portland Corporate Center
12400 Portland Avenue South
Suite 132
Burnsville, Mn 55337

RE: Scott Lawrence Swanson and Michelle Ann Klein Swanson  BKY No. 09-40290 –
Excellence Award explanation.

Dear Mr. Seaver

Attorney Joe Kelly has asked me to provide a response to your letter dated March 10,
2009 which requests a written explanation of the Excellence Award that I received on
2/18/09 in the amount of $8000.00.   Let me begin by explaining that my position at IBM
as the Oracle Alliance Client Executive is NOT a commissionable/incentive based
position I am 100% salary based and I am not customer facing. My role is to develop and
manage the Alliance/Partnership between IBM and Oracle Corporation.

In early February 2009 I successfully coordinated a team of technologist and consultants
to develop a migration plan/methodology for JDE legacy clients.   This solution will be
rolled out to the IBM sales teams in early July 2009.   The Excellence Award was
announced to me on Monday – 02/16/09 on my America's Alliance cadence call with my
Manager.   I was not provided anything in writing regarding this award other than the
line item on my payroll stub which you have seen.

I did contact the IBM Employee Services Department on Wednesday May 20, 2009 and
discussed your request with the HR Representative.   He provided me the following
information, but also cautioned me that I am not to release any IBM Personal/Business
Incentive information to a third party as it may violate the IBM Business Conduct
Guidelines (BCG).     I believe the information that I am providing below should suffice
and does not violate IBMs BCG.  If necessary I can provide you with contact
information for IBM Legal where you may be able to get more information.

**What is the eligibility criteria for Excellence Awards?**

**Employees must meet all of the following to be eligible for Excellence Awards:**

- In a band 6-10 role as a full-or part-time regular
- Not eligible for sales or services incentives plan
- Not a supplemental, unless country labor law guidelines permit



- Not on an unpaid LOA (employees on paid LOAs are eligible even during the months they are inactive)
- An active employee

**Managers will base their award decisions on the value and impact of the employee's contributions using the following awards payment guidelines:**

-Unlimited number of awards can be given annually as long as they do not exceed the Excellence Awards budget or the maximum number of awards allowed in each country
-Each award can range up to 20% of an employee's full-year salary. Rules vary by country

**Examples of award-winning contributions include:**

-Completed internal project on time/under budget, with high quality
-Achieved key critical milestone
-Developed intellectual capital and/or contributed to re-use of existing assets
-Demonstrated exemplary teaming with peers within business unit, across units or across IBM
-Delivered significant process improvement or cost take out

I hope this is the information and explanation is what you are looking for. If not, please let Attorney Joe Kelly know and I will provide contact information for the IBM Legal Department.

Thank you,

Respectfully,

*Michelle Klein-Swanson*

Michelle Klein-Swanson
16900 Weaver Lake Drive
Maple Grove, MN 55311


CC:   Joe Kelly – Esquire
      IBM Employee Service Center Representative - Bryan